Thomas Huber *et al.*

*v.*

Edwin J. Hess.

|191　　305|
|114a ⁴126|

*Opinion filed June 19, 1901—Rehearing denied October 9, 1901.*

1. Mortgages—*redemption by judgment creditor passes title to judgment debtor's property, only.* Where two lots covered by the same mortgage become the property of different persons prior to the foreclosure of the mortgage and the sale *en masse* of both lots, a judgment creditor of one, only, of such owners, who after twelve months makes redemption *en masse* of both lots, acquires title only to the lot owned by his judgment debtor.

2. Same—*to entitle one to contribution for redemption, equities of the parties must be equal.* To entitle the owner of one lot to contribution from the owner of another lot for redemption from a mortgage covering both properties the equities of the parties must be equal, since if there was any obligation resting upon the person who made redemption to discharge the debt as his own he can claim nothing from the other, even though the latter is benefited by the redemption.

3. Same—*when judgment creditor is not entitled to contribution for redemption.* Where two lots are mortgaged by a testator, but by his will he devises one lot to his son and the other to his daughter, accompanying the devise to the daughter with the condition that she pay the full amount of the encumbrance on both lots, the lot so devised to her is primarily liable for the encumbrance; and if both lots are sold *en masse* on foreclosure, and after twelve months a judgment creditor of the daughter alone makes redemption of both lots, he acquires no right of contribution as to the lot owned by the son, where the bill for foreclosure and the decree both recite the provisions and conditions of the will, which is also on record.

4. Judicial sales—*purchaser is chargeable with notice of facts disclosed by the record.* A party purchasing at a judicial sale is charged with notice of such material facts as are disclosed by the record of the proceedings under which he derives title, and he will be presumed to have examined the same before he became a purchaser.

Appeal from the Circuit Court of Cook county; the Hon. E. F. Dunne, Judge, presiding.

This is an appeal by the appellants, Thomas Huber, Mary T. Huber, his wife, and K. G. Schmidt Brewing Company, a corporation, from a decree rendered by the circuit court of Cook county on December 12, 1900, upon the

191—20

application of appellee, Edwin J. Hess, filed on August 24, 1900, under the Torrens law, to register the title in himself to lots 10 and 11 in Hapgood & Barry's subdivision of the north half of block 24, in the canal trustees' subdivision, in section 33, township 40 north, range 14, east of the third principal meridian, in Chicago, Cook county, Illinois. Appellee's application alleged, that he was the owner in fee simple of both of the lots, and that the Hubers and Maria A. Schumacher and her husband, Friederich Schumacher, were the only persons interested in the property other than appellee, and that they were only so interested as tenants at the sufferance of appellee.

The appellants, Thomas Huber and Mary T. Huber, filed an answer, denying that appellee was the owner in fee simple of lot 11, and alleging that they were the owners in fee simple absolute of lot 11. The appellant, K. G. Schmidt Brewing Company, filed its answer denying that appellee owned any interest in said lot 11, and alleged that Thomas Huber was the owner in fee of said lot 11, and set up certain judgments obtained by it against Thomas Huber and his wife, and also set forth in detail the proceedings under which appellee claims title.

The examiner found in his report, that, at the time of the filing of the application, the appellee was the owner in fee simple of said lot 10, and that the same was occupied by Friederich Schumacher and Maria Anna Schumacher as tenants at will under appellee; but the examiner found that appellee had not such title to said lot 11 as to warrant registration thereof. Objections to the examiner's report were filed on December 3, 1900, by the appellee.

On December 3, 1900, the court below entered a decree, decreeing title to said lot 10 in appellee in fee simple, and directing the registrar of titles to register such title; but ordered that the case, so far as it related to lot 11, should be continued for further hearing. On December 12, 1900, the court entered a decree, decreeing that the

title to said lot 11 in fee simple is vested in the appellant, Thomas Huber, subject to the liens therein declared to exist, and that appellee, Hess, was not entitled to the registration of the said lot 11, but further decreed that appellee, Hess, by reason of his having redeemed lot 11 from the foreclosure sale hereinafter mentioned, became subrogated to the rights of the purchaser, or assignee of the purchaser, at the foreclosure sale to the extent of said Hess having a first lien on lot 11 for re-imbursement of the redemption money, in the proportion of the relative value of said lot 11 to the value of the said lot 10; that lot 11 on the day of redemption, to-wit: June 28, 1900, became subject to the said lien, because of said redemption *en masse*, for the payment to said Hess of such proportion of the whole of said redemption money, paid by said Hess, as the value of said lot 11 bore to the value of both said lots 10 and 11 on June 28, 1900; that is to say, said Huber should contribute such sum to said Hess towards the re-payment of said sum of $5540.51 hereinafter mentioned in the true proportion that the value of said lot 11 bore to the value of both said lots 10 and 11 on June 28, 1900. It was further therein decreed, that Hess has a first lien for such sum of money on said lot 11, which is prior to any other lien or charge, provided that the amount of said lien should not be satisfied out of any other property of said Huber than said lot 11; also that the inchoate right of dower of Mary T. Huber, and the rights of homestead of said Hubers in lot 11 were subject to the lien in favor of the appellee; and that the judgments of said K. G. Schmidt Brewing Company were liens on said lot 11 subject to the lien in favor of the appellee.

The facts, as shown by the pleadings, the testimony taken, the report of the examiner, and the decree of the court, are substantially as follows: On July 20, 1890, one Maria Anna Huber was the owner of said lots 10 and 11. Lot 11 was a corner lot improved by a frame building, and lot 10 was an inside lot adjoining said lot 11, and

was improved by a brick building. On said July 20, 1890, Maria Anna Huber, then a widow, gave a trust deed, waiving homestead, to one Joseph H. Ernst, trustee, conveying said lots 10 and 11 to secure her note for $3500.00, payable four years after date, with interest at six per cent per annum. The maturity of the loan was subsequently extended until June 20, 1898. On March 1, 1895, Maria Anna Huber died testate, leaving her surviving Thomas Huber and Maria Anna Schumacher, her children and Michael Huber and Thomas Huber, her grandchildren. Her will was dated December 16, 1893, and was admitted to probate on March 12, 1895, in the probate court of Cook county.

By her will Maria Anna Huber gave and bequeathed to her son, Thomas Huber, said lot 11, together with the frame buildings thereon, and to his heirs and assigns forever, but upon the express condition that he, or his heirs and assigns, should pay the sum of $1000.00 to Michael Huber, his heirs and assigns, the bequest of said $1000.00 to said Michael Huber having been thereinbefore made. By her will said testatrix gave, devised and bequeathed to her daughter, Maria A. Rick, since become Maria Anna Schumacher, the wife of Friederich Schumacher, said lot 10, together with the brick building situated thereon, said gift, devise and bequest of said lot 10 being followed by these words: "This bequest is made upon the express condition that said Maria A. Rick shall pay the full amount of the encumbrance upon said lots 10 and 11, in Hapgood & Barry's subdivision aforesaid, viz.: the sum of $3500.00 principal and all unpaid interest; said encumbrance is secured by trust deed upon both of said lots; and upon the further condition that said Maria A. Rick shall pay the sum of $1000.00 to her grandson, Thomas Huber, his heirs and assigns, being the bequest hereinbefore made to said Thomas Huber."

On October 20, 1898, Andrew J. Ernst filed a bill in the superior court of Cook county to foreclose said trust deed,

securing the said note of $3500.00, making as parties defendant thereto Maria Anna Schumacher and her husband, Thomas Huber and his wife, and the K. G. Schmidt Brewing Company, and others. On April 20, 1899, said lots 10 and 11 were sold, under the decree in such foreclosure suit, *en masse* to Joseph H. Ernst for $4951.87. The decree of sale, which had theretofore been entered on March 20, 1899, ordered that the master should first offer for sale said lot 10. No redemption was made from this foreclosure sale either by Thomas Huber or by Maria Anna Schumacher.

On June 28, 1900, the appellee, Hess, recovered a judgment in the circuit court of Cook county against Maria Anna Schumacher and Friederich Schumacher for $2100.00, and costs. Under said judgment, appellee, Hess, redeemed said lots 10 and 11 from said foreclosure sale, and, by virtue of said redemption, said lots were sold by the sheriff to appellee, Hess, on July 24, 1900, for the amount of the redemption money, and costs; and, thereupon, a sheriff's deed was issued to said appellee, Hess, conveying both said lots. The amount deposited with the sheriff by appellee to effect such redemption was the sum of $5541.51, including taxes and interest. Before said sale by the sheriff, appellee caused an execution to issue out of said circuit court on said judgment against the Schumachers, and placed the same in the hands of the sheriff, who levied the same upon said lots 10 and 11.

Prior thereto, and on September 24, 1896, K. G. Schmidt Brewing Company recovered a judgment against Thomas Huber for $1047.30, upon which execution was issued and returned unsatisfied. Said brewing company also recovered another judgment against said Huber on July 25, 1900, for the sum of $1289.17 and costs. Both of the said judgments are wholly unpaid. Said lot 11 is now occupied by Thomas Huber claiming to be the owner thereof.

On January 11, 1898, an agreement was entered into between Thomas Huber, of the first part, and Maria Anna

Schumacher and her husband, of the second part, by the terms of which Huber agreed to convey to the Schumachers lots 30 and 31 in block 11 in Hosmer & Mackey's subdivision, subject to a trust deed to Joseph H. Ernst securing $500.00 which the Schumachers assumed and agreed to pay; and Huber also agreed to pay the Schumachers $100.00 as additional consideration; and thereby the Schumachers agreed to convey to Huber said lot 10 subject to the payment of the trust deed to Ernst securing the said indebtedness of $3500.00, and also subject to certain judgments and trust deeds against the Schumachers, aggregating, with said trust deed to Ernst, about $6400.00. By the terms thereof each party was to provide for the use of the other, within a reasonable time, proper abstracts of title to the properties to be conveyed; also by the terms of the agreement all deeds were to be passed, and the negotiations to be closed, within a reasonable time from the date of the agreement; and time was thereby declared to be the essence of the agreement.

When lots 10 and 11 were sold *en masse* to Joseph H. Ernst, the master executed to said Ernst a purchaser's certificate of purchase of the two lots, and recorded the same. Subsequently, the report of sale was approved and confirmed by the superior court, and thereafter said Ernst assigned said certificate to one George W. Kellner.

WINSTON & MEAGHER, (EDWARD S. WHITNEY, of counsel,) for appellants.

E. F. HERRMANN, and J. KENT GREEN, for appellee:

Appellee was a creditor authorized to redeem under the statute. Rev. Stat. chap. 77, sec. 20.

The right to redeem carries with it the right to purchase and obtain legal title. Whoever has a right to redeem may purchase and receive title at the redemption sale of property redeemed. *Oldfield* v. *Eulert*, 148 Ill. 620.

Appellee became substituted, in equity, in place of the holder of the certificate of purchase. 2 Wiltsie on

Mortgage Foreclosure, (Kerr's Suppl.) sec. 962; *Ebert* v. *Gerding*, 116 Ill. 216; *Ogle* v. *Koerner*, 140 id. 170; *Schroeder* v. *Bauer*, id. 135; *Hough* v. *Insurance Co.* 57 id. 318; *Young* v. *Morgan*, 89 id. 199; *Beaver* v. *Slanker*, 94 id. 175; *Bank* v. *Bierstadt*, 168 id. 618.

The lien of the sale redeemed from is the lien that is enforced, which wipes out all subsequent estates, even though the redeeming creditor has no execution against the person holding such subject estates. The former owner of the equity of redemption has no right to be heard after twelve months' redemption period has expired. *Oldfield* v. *Eulert*, 148 Ill. 614; *Fitch* v. *Wetherbee*, 110 id. 475; *Lamb* v. *Richards*, 43 id. 312; *Massey* v. *Westcott*, 40 id. 160; *Moore* v. *Hopkins*, 93 id. 505; *Smith* v. *Mace*, 137 id. 68; *Breedlove* v. *Austin*, 146 Ind. 694; *Pearson* v. *Pearson*, 131 Ill. 464; *Herdman* v. *Cooper*, 138 id. 583; *Patterson* v. *Rosenthal*, 117 Ind. 831.

None but joint judgment creditors can in equity object to appellee's redemption. *Fischer* v. *Eslaman*, 68 Ill. 82.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon this record two questions are presented for our consideration: *First*, did appellee, by the statutory proceedings set forth in the statement preceding this opinion, acquire the title to lot 11? *Second*, if appellee did not so acquire title by such proceedings, did he become entitled thereby to any equitable rights of contribution or subrogation against lot 11? The court below by its decree answered the first question in the negative, and the second question in the affirmative. The appellants claim that, by the redemption and execution sale, the appellee obtained no right, title or interest, legal or equitable, against said lot 11, and no right of contribution or subrogation against appellant, Thomas Huber. Appellee claims that, by said redemption and execution sale, he became invested with the title in fee simple absolute to

said lot 11, but that, if he is not the owner of lot 11, he is entitled to a lien thereon for contribution, as found by the decree of the court below in his favor.

*First*—There seems to be no contest in this case as to lot 10. The court below decreed title to lot 10 in appellee in fee simple, and directed the registrar of titles to register such title; and the action of the court below in this regard is not complained of. The contest between the parties is wholly as to lot 11.

The trust deed, executed in her lifetime on July 20, 1890, by Maria Anna Huber, covered both lots 10 and 11. Upon the foreclosure of said trust deed both lots were sold to Joseph H. Ernst, and a certificate of sale or purchase covering both lots was issued to him. Twelve months passed after the foreclosure sale, which took place on April 20, 1899, without any redemption of the premises, either by Maria Anna Schumacher, or by Thomas Huber. The judgment in favor of the appellee, rendered on June 28, 1900, a little over fourteen months from the date of the foreclosure sale, was not a judgment against Thomas Huber, but a judgment against Maria Anna Schumacher and Friederich Schumacher. Under the will of Maria Anna Huber, Mrs. Schumacher was devisee of lot 10 alone, lot 11 having been devised to Thomas Huber. Appellee, under a judgment and execution sale against the owners of lot 10 alone, made a redemption of both lots 10 and 11 from the foreclosure sale.

Although, when the trust deed securing the $3500.00 was first made, Maria Anna Huber was sole owner of both lots 10 and 11, yet, when the foreclosure took place after her death, the ownership by the terms of her will had become severed, so that lot 10, subject to the condition hereinafter mentioned, was owned by Mrs. Schumacher, and lot 11 by Thomas Huber. Thus, there were then two separate owners of the lots covered by the trust deed.

In *Fischer* v. *Eslaman,* 68 Ill. 78, it was held that, where the land owned by two as tenants in common, is sold on

foreclosure of a mortgage given by them, a sale, under a redemption made by a judgment creditor of one of them, will pass the title of that one only; and that, where the land of A and B, owned by them as tenants in common, is sold upon foreclosure of a mortgage given by them, and, after the expiration of twelve months, is redeemed by a judgment creditor of A, and a deed made to the creditor, the latter will acquire no title to the interest of B. In *Fischer* v. *Eslaman, supra,* Patience A. Champion deeded the property there in question to Ralls and Pensoneau, who on the same day mortgaged the property back to her; judgments were then recovered against Ralls by Fischer and others; the mortgagee then foreclosed her mortgage and bought in the entire property at foreclosure sale; executions were taken out on these judgments of Fischer and others; plaintiffs therein paid to the sheriff money sufficient to redeem from the foreclosure sale; the executions were levied on the entire property, and it was sold to Fischer at sheriff's sale, and the sheriff's deed was issued to him; under such a state of facts, we held that, by this redemption and sale, Fischer had prior title to the undivided half interest of Ralls, his execution debtor alone, but that, as against the interest of Pensoneau, the other tenant in common, Fischer had only an equitable claim for contribution. In that case we said (p. 83): "Conceding that it was necessary to pay the entire amount due to Mrs. Champion in order to effect a redemption, so as to reach Ralls' interest, it does not follow that this conferred a right to treat Pensoneau, or those claiming in his right, as judgment debtors to those who only had judgments against Ralls. Undoubtedly, in such case, those redeeming would have an equitable claim against the Pensoneau interest, but it would have to be enforced in a court of equity, and not in a court of law upon the trial of an ejectment, claiming the fee to the land. It was held by this court, in *Titsworth* v. *Stout,* 49 Ill. 78, that, where one tenant in common removes an

encumbrance from the common estate, the other tenants must contribute to the extent of their respective interests; and, to secure such contribution, a court of equity will enforce upon such interests an equitable lien of the same character with that which has been removed by the redeeming tenant; and the principle would seem to be equally applicable to the judgment creditor of a tenant in common." The right to equitable contribution was held in the *Fischer case* to be enforcible only in a court of equity; and this right may be enforced, whether the owners of the property are tenants in common of one lot, or owners in severalty of two lots, covered by the same mortgage. A court of equity has equal power to establish and enforce the right of contribution in the one case, as well as in the other. The only difference between the two cases would be that, in the one case, the amount of contribution must be arrived at by computation, and in the other by the relative values of the lots.

"In those cases where one of several owners redeems the mortgaged premises, he thereby becomes substituted, in equity, in the place of the mortgagee, and is entitled to hold the land as if the mortgage existed, until the other owners re-pay to him their shares of the encumbrance; he in effect becomes the assignee of the mortgagee, for the purpose of enabling him to obtain the whole title to the land, if the other owners decline to contribute their respective shares towards the removal of the encumbrance." (Kerr's Supplement to Wiltsie on Mortgage Foreclosures, sec. 962.) Under the doctrine laid down in *Fischer* v. *Eslaman, supra,* appellee was not, as to Thomas Huber, a redemption creditor. As only a judgment creditor has the right to redeem, there can be no redeeming creditor who is not a judgment creditor. The appellee was a judgment creditor of the Schumachers, but, so far as the record discloses, of no one else. As was well said in the *Fischer case:* "It surely could not be supposed that, because a party had a judgment against

a particular individual, he thereby became a judgment creditor of any and everybody else whose property had been sold at master's or sheriff's sales, and had not been redeemed within twelve months; and yet this is the only hypothesis upon which these parties can be called redeeming creditors as to Pensoneau's [Huber's] interest." It was further said in the *Fischer case:* "The right to redeem from sheriff's and master's sales, after the expiration of twelve months and before the expiration of fifteen months from the day of sale, is alone derived from the statute, and it is, by it, limited to judgment creditors." Inasmuch, therefore, as appellee, Hess, had no judgment against Huber, he was not a judgment creditor, so far as Huber's interest in lot 11 was concerned, and acquired no right to have it sold by the mere act of paying money into the hands of the sheriff to redeem from the master's sale. The fact, that he had a judgment against the Schumachers, gave him no more right to acquire title to Huber's interest in lot 11, than it did to that of anybody else against whom appellee had no judgment.

We are, therefore, of the opinion that the court below decided correctly in decreeing that the title to lot 11 in fee simple was vested in the appellant, Huber, and that the appellee was not entitled to registration of the title to lot 11.

*Second*—Did appellee, who thus acquired no title to lot 11, become entitled, by the redemption of both lots 10 and 11, to an equitable right of contribution or subrogation against lot 11 devised under the will to Thomas Huber? It is contended on behalf of appellee that, if he redeemed lot 11 belonging to the appellant, Thomas Huber, from the foreclosure sale, and by such redemption acquired no legal title to lot 11, he should have a right of contribution against the latter lot, so as to secure a re-imbursement of the redemption money in the proportion of the relative value of lot 11 to the value of lot 10; and that, under the doctrine of *Fischer* v. *Esla-*

*man, supra,* he would be entitled to a lien on lot 11 for such re-imbursement.

Appellants, however, contend that appellee, Hess, is not entitled to a lien for re-imbursement or contribution against lot 11, for the alleged reason that lot 10 was primarily liable for the payment of the whole encumbrance resting upon both lots 10 and 11. This contention grows out of the character of the devise of lot 10 to Maria Anna Schumacher. Maria Anna Huber devised lot 10 to her daughter, Mrs. Schumacher, and accompanied the devise or bequest with the condition that Mrs. Schumacher should pay the full amount of the encumbrance on said lots 10 and 11. It is claimed that, had Mrs. Schumacher paid the Ernst trust deed or redeemed from the foreclosure sale, she would not have been entitled to subrogation or contribution against the Huber lot, and that the equitable rights in this regard of appellee, as judgment creditor, are no greater than those of Mrs. Schumacher, as judgment debtor.

The doctrine, invoked by the appellants upon this branch of the case, is stated as follows: "When the estates of two persons are subject to a common mortgage, which one of them pays for the benefit of both, he has a right to hold the whole estate thus redeemed until the other party shall pay an equitable proportion of the sum paid to redeem; or the party who has paid the encumbrance may in equity enforce contribution from the other. But to entitle one to contribution from the other, their equities must be equal. If there was any obligation resting upon the person who paid the encumbrance to discharge it as a debt of his own, he can, of course, claim nothing from the other, although the latter was benefited by the payment. * * * The test, by which the right to contribution, is always determined is found in the inquiry, whether the equities of the parties are equal; if they are equal, the right to contribution exists; but if they are not equal, it does not exist." (2 Jones on Mort-

gages,—5th ed.—sec. 1089). It is said, in the present case, that the equities of Mrs. Schumacher and her brother, Thomas Huber, are not equal. The claim of appellants is, that, inasmuch as Mrs. Schumacher took lot 10 under the will subject to the condition that she should pay off the mortgage upon both lots 10 and 11, she was under obligation to discharge the whole encumbrance upon both lots as a debt of her own, and that the appellee, as her judgment creditor, levying upon her interest in lot 10, occupies the same position in this respect as Mrs. Schumacher herself. (*In re Dunlop*, L. R. Ch. Div. 583; *Butte* v. *Cunnynghame*, 2 Russ. 279; *Vogle* v. *Brown*, 120 Ill. 338; *Moore* v. *Shurtleff*, 128 Ill. 370). It is conceded that, so far as the mortgagee was concerned, both lots 10 and 11 were pledged to the payment of the mortgage debt, and both Mrs. Schumacher and Thomas Huber were equally under obligations to the mortgagee to pay the debt, but, it is insisted that, as between Mrs. Schumacher and Thomas Huber, lot 10 was the primary fund, out of which the mortgage should have been paid, and lot 11 was only secondarily liable therefor. The superior court, in its decree of foreclosure, recognized the primary liability of lot 10 by providing, that that lot should be first offered for sale to satisfy the amount found due by the decree to the mortgagee.

We are inclined to think that the contention of the appellants in this regard is correct It makes no difference whether the condition, attached to the devise of lot 10, be construed as a condition precedent, a condition subsequent, or simply as a charge or lien. Appellee was chargeable with knowledge of the condition, on which the title of his judgment debtor, Mrs. Schumacher, to lot 10, was based. The condition, as set forth in the will, was in the direct chain of appellee's title. The will was of record in the probate court of Cook county. The contents of the will and the condition in question were fully set up in the foreclosure bill filed by the mortgagee,

Ernst. The condition is also specifically recited in the decree of foreclosure under which the sale, from which appellee redeemed, was made. A party purchasing at a judicial sale is charged with notice of such material facts, as the record of the proceedings, under which he derives title, discloses, and he will be presumed to have examined the same before becoming a purchaser. (*Webber* v. *Clark*, 136 Ill. 256). It also appears that, when the sheriff made the sale under the judgment of appellee, the appellant, Thomas Huber, gave notice, express and public, that the purchaser at the sale would acquire no right, title or interest, legal or equitable, in or to lot 11, and would be held and considered as a trespasser upon the rights of Thomas Huber.

So far as the contract of January 11, 1898, was concerned, that contract appears to have been abandoned by both parties. Neither party sought to enforce it against the other, nor was anything done under it. The deeds, provided for by its terms, were to pass, and the negotiations therein provided for were to be closed, within a reasonable time; and such reasonable time had long since elapsed before the redemption here under consideration took place.

It is clear, that appellee's judgment debtor, Mrs. Schumacher, did not own lot 10 absolutely, but owned it subject to the condition already specified. As the condition was annexed to the estate as part of the tenure, it would of course affect the land into whatever hands it might pass. (6 Am. & Eng. Ency. of Law,—2d ed.—p. 505; *Hogeboom* v. *Hall*, 24 Wend. 148; *Taylor* v. *Sutton*, 15 Ga. 103).

We are, therefore, of the opinion that the court below erred in holding that appellee had a right of contribution as against lot 11 or its owner, Thomas Huber.

Accordingly, the decree of the circuit court is reversed and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*